298 So.2d 169 (1974)
A. John OSEPCHOOK, Appellant,
v.
GATEWAY INSURANCE COMPANY, a Foreign Corporation Authorized to Do Business in the State of Florida, Appellee.
No. 73-101.
District Court of Appeal of Florida, Fourth District.
July 5, 1974.
Rehearing Denied August 20, 1974.
James R. Caldwell, Jr., Pitts, Eubanks, Ross & Rumberger, Orlando, for appellant.
Leonard N. D'Aiuto, Edna L. Caruso, and Morgan S. Bragg, Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, West Palm Beach, for appellee.
OWEN, Chief Judge.
The question we decide here is whether physical contact between the insured vehicle and the at-fault vehicle is a prerequisite to recovery under basic property damage coverage issued pursuant to F.S. Section 627.738(2)(b), F.S.A.[1] The trial court answered this question in the affirmative, and on undisputed facts showing that no contact occurred, entered summary judgment favorable to the insurer, from which the insured has appealed. We affirm.
Mr. Osepchook was the named insured under an automobile liability insurance policy issued by Gateway Insurance Company, which policy provided security under F.S. Section 627.730-627.741, F.S.A., known as the "Florida Automobile Reparations Reform Act". The insured elected to purchase basic property damage coverage which the insurer was authorized to offer by F.S. Section 627.738(2), F.S.A. This coverage was provided in the policy in the following language:
"The company will pay for direct and accidental loss... caused by contact with a motor vehicle whose owner, registrant, operator, or occupant, or other person or organization legally responsible for his acts or omissions, is entitled to an exemption from tort liability for such loss under the Florida Automobile Reparations Reform Act... ."
During the policy period, Mr. Osepchook was driving the insured automobile in the *170 center lane of Interstate Highway 4 within the city limits of Orlando, Florida, when another vehicle overtaking him on his left side abruptly swerved into his lane less than a car length in front of him. As a defensive measure, Mr. Osepchook applied the brakes to his vehicle and swerved to his right but upon realizing the presence of vehicular traffic in the lane to his right, he swerved back to his left to avoid a collision. As a result of this evasive maneuvering, his automobile went out of control, striking a concrete embankment and sustaining damage to the extent of approximately $1,500.00. There was no contact between Mr. Osepchook's automobile and the vehicle which swerved in front of him and that vehicle continued without stopping, the identity of its owner or operator being unknown and the vehicle itself being described only as a black, late-model Oldsmobile sedan bearing Florida registration. Timely notice and proof of loss was furnished to appellee, but coverage having been denied, this suit followed.
The court granted summary judgment in favor of the insurer because first, the insured could not show that the at-fault vehicle was one subject to the Florida Automobile Reparations Reform Act, and second, there was no contact between the insured vehicle and the at-fault vehicle as required by the policy provision. Because the second of these grounds is wholly dispositive of the case, we find it unnecessary to consider appellant's contentions relative to the other ground.
The insurance contract, tracking the plain and unambiguous language of Section 627.738(2)(b) provides for basic property damage coverage only when the damage results from contact between the insured vehicle and the at-fault vehicle. Appellant contends, however, that the requirement of actual contact is not a prerequisite to recovery under this coverage, relying upon Bulletin 545 issued by the Insurance Commissioner on February 14, 1972. In that bulletin, the Insurance Commissioner concluded, on the authority of Brown v. Progressive Mutual Insurance Co., Fla. 1971, 249 So.2d 429, that the contact requirement under basic property damage coverage was not a prerequisite to recovery so long as the insured could provide reasonable proof that the damage was proximately caused by a vehicle for which security was required under the act. But in the Brown case (involving the contact requirement in a "hit-and-run" situation under uninsured motorist coverage), the court invalidated the contact requirement because it made the insurance policy more restrictive than the language of the uninsured motorist statute, Section 627.0851, F.S.[2] In this case, we are concerned with language of the insurance policy which is not more restrictive than the language of the statute, but instead is identical to it. We cannot say that the language of the insurance policy in this case is void as against public policy when it is identical to the language in the statute, which is itself ipso facto declarative of public policy on this subject.
After all, the owner of a motor vehicle is not required to maintain security with respect to property damage to his own vehicle. See, F.S. Section 627.738(1), F.S.A. Even should he elect to have such coverage, he is afforded the option to purchase either full or basic coverage. Full coverage provides insurance without regard to fault for accidents occurring within the United States or its territories or possessions or Canada. Section 627.738(2)(a), F.S. For one who does not wish to pay the premium for full coverage, basic coverage is available, but the statute permits this coverage to be limited to insurance against damage (1) caused by the fault of another (2) resulting from contact (3) between the insured vehicle and a vehicle with respect to which security is required under the act. The language of the statute is plain and unambiguous. We think equally plain and unambiguous is the legislative intent that those who elect to purchase basic property *171 damage coverage can expect to find policy limitations identical to or no less restrictive than the limitations permitted by the statute. When the legislative intent as evidenced by a statute is plain and unambiguous, then there is no necessity for any construction or interpretation of the statute, and the courts need only give effect to the plain meaning of its terms. Alligood v. Florida Real Estate Commission, Fla.App. 1963, 156 So.2d 705. See also, State v. Egan, Fla. 1973, 287 So.2d 1, and cases cited in footnote 4 thereof.
If the requirement of physical contact is to be removed as a prerequisite to or limitation upon recovery under basic property damage coverage, it should be accomplished by the legislative branch of government, not the judicial. The language of the policy requires contact, the statute expressly authorizes such policy language, and it being conceded by all parties that contact did not occur, the trial court was eminently correct in entering summary judgment in favor of the insurer.
Affirmed.
LEE, J. CAIL, Associate Judge, concurs.
CROSS, J., dissents, with opinion.
CROSS, Judge (dissenting):
I must respectfully dissent.
The majority interprets the word "contact" as used in Section 627.738(2)(b), Florida Statutes, F.S.A., and the policy issued by Gateway Insurance Company to mean the same as "physical contact." I see no requirement either by specific legislative mandate, by rule of construction, or by necessary implication which would lead me to conclude that the word "contact" should be so narrowly construed.
In the case at bar, we are merely concerned with a sequence of events set in motion by a vehicle which proximately caused a contact with the insured vehicle. Proof of proximate causation satisfies the statutory requirement for "contact." Familiar tort doctrines establish liability for all consequences which follow the setting in motion of a causal force, when no new force intervenes. Prosser on Torts, 3d ed., § 50, 303-04.
The common-law concept of battery is helpful in analyzing the meaning of contact and in defining the extent to which contact may properly be extended. In common-law battery, defined as the willful touching of the person of another, direct touching was an essential element of the tort and the remedy was an action of trespass vi et armis. The idea of direct touching comprehended any forcible contact brought about by an object or substance thrown or launched or set in motion by a defendant. A touching which resulted from an instrument directly set in motion by a defendant was a direct application of force and fully satisfied the requirement of bodily contact. By contrast, indirect contacts were not classified as batteries at common law, but merely as actionable wrongs whose remedy was an action for trespass on the case. This distinction between direct contact brought about by the application of force and indirect contact brought about by other means has been aptly summarized in Prosser on Torts, 3d ed., at 28-29:
"Trespass was the remedy for all forcible, direct and immediate injuries, whether to person or property  or in other words, for the kind of conduct likely to lead to a breach of the peace by provoking immediate retaliation. Trespass on the case, or the action on the case, as it came to be called, developed somewhat later, as a supplement to the parent action of trespass, designed to afford a remedy for obviously wrongful conduct resulting in injuries which were not forcible or not direct. The distinction between the two lay in the immediate application of force to the person or property of the plaintiff, as distinguished from injury through some obvious and visible secondary cause. The classic illustration *172 of the difference between trespass and case is that of a log thrown into the highway. A person struck by the log as it fell could maintain trespass against the thrower, since the injury was direct; but one who was hurt by stumbling over it as it lay in the road could maintain, not trespass, but an action on the case."
It is my opinion that when the legislature established the requirement of "contact" in the present law instead of "physical contact" it intended to make no distinction between a direct and indirect application of force similar to that which the common law had earlier found useful in distinguishing between trespass and case.
The requirement of "physical contact" aspired by the majority leads to obvious inequitable results. One can easily visualize the driver who miraculously manages to steer his car off the highway and thus avoids a collision with an oncoming vehicle traveling in the wrong lane, and in so avoiding this collision with possible loss of life, effects a rather abrupt stop against an unyielding abutment. This hero, under the majority view, finds himself with a damaged automobile and no coverage for basic property damage. Examples of inequities are unending and far outweigh any possibility of abuses arising from claims that a phantom car had caused the accident, for each claim is subject to the protection of proof.
"The argument ... of physical contact ... is fallacious. The only reason for such a requirement is to prove that the accident actually did occur as a claimant may say it did. This is a question of fact to be determined by the jury, or the judge if demand for jury trial is not made. If the injured party can sustain the burden of proof that an accident did occur, he should be entitled to recover, ... ." Brown v. Progressive Mutual Insurance Company, 249 So.2d 429 (Fla. 1971).
The requirement of "physical contact" by the majority illustrates vividly the bitter truth of that timeworn pronouncement that "close ones only count in horseshoes."
The majority finds it easy to dance to the tune that construction or interpretation of Section 627.738(2)(a), Florida Statutes, F.S.A., is unnecessary, yet in reality, the majority has interpreted the word "contact" in the statute to effectuate non-coverage, save for physical contact.
I am impelled to follow to a higher piper. It has always been my belief that when members of the public purchase policies of insurance, they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. This is what they pay their premium for. They should not be subjected to narrow interpretations which afford no coverage for premium dollars. Their policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow.
The soundest basis for the rule of construction against the insurer is an amplification of the standard of construction according to the object of the contract; that is, in the light of the purpose of the contract to give protection. Couch on Insurance 2d, § 15.80.
The interpretation by the majority of the word "contact" to mean the same as "physical contact" inequitably defeats the legislative intent to compensate those persons who elect under the Florida Automobile Reparations Reform Act to purchase basic property damage coverage. I would reverse and remand this cause.
NOTES
[1] "627.738 Property damage, basic or full coverage; tort liability. 

* * * (2) Every insurer providing security under §§ 627.730-627.741 shall offer the owner either full or basic coverage for accidental property damage to the insured motor vehicle, as follows: * * *
(b) Basic coverage shall be limited to insurance against damage caused by the fault of another resulting from contact between the insured vehicle and a vehicle with respect to which security is required under §§ 627.730-627.741."
[2] Now found in F.S. Section 627.727, F.S.A.